## GWEN IZARD *v.* MARK IZARD
### (AC 24606)

Foti, Bishop and DiPentima, Js.

Argued January 13—officially released April 19, 2005

*Steven D. Ecker*, for the appellant (plaintiff).

*Gaetano Ferro*, with whom were *Christine M. Whitehead* and, on the brief, *Norman A. Roberts II*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. In this marital dissolution appeal, the plaintiff, Gwen Izard, challenges the financial orders issued by the trial court in its judgment dissolving the parties' marriage. She claims, inter alia, that the court

abused its discretion by taking judicial notice of the effect of inflation on the income of the defendant, Mark Izard. We reverse the judgment of the trial court as to the court's financial orders and remand the matter for a new hearing as to all financial issues.[1]

The facts relevant to the resolution of the plaintiff's appeal are as follows. The parties married on June 2, 1982. On July 6, 2001, a dissolution action was filed by the plaintiff, and a trial was held in February, 2003. The only contested issues were alimony and property distribution. Financial affidavits provided by the parties indicated a total net worth of approximately $15.2 million. On August 14, 2003, the court issued its ruling orally. Finding that the marriage had broken down irretrievably, the court entered an order regarding alimony and property distribution, awarding the plaintiff a total "in excess of $3.5 million," which was less than one quarter of the parties' total net worth. The plaintiff subsequently filed motions to open the judgment, to set aside the financial orders and for a new trial, all of which were denied. This appeal followed.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presump-

---

[1] The plaintiff also claims that the court (1) improperly penalized her for her report to a confidential physician health program administered by the Connecticut Medical Society, (2) improperly equated that reporting with the defendant's marital misconduct, (3) abused its discretion in admitting the expert testimony of James C. Black, a psychiatrist, and (4) improperly delegated its authority over the division of personal property to a nonjudicial arbitrator for binding arbitration. We need not consider the merits of those claims in light of our determination that a new hearing is required.

tion . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. . . . [I]n matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence." (Citations omitted; internal quotation marks omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004).

The plaintiff claims that the court abused its discretion by taking judicial notice of the effect of inflation on the income of the defendant. See *Pie Plate, Inc.* v. *Texaco, Inc.*, 35 Conn. App. 305, 316, 645 A.2d 1044, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). We agree.

When the parties married in 1982, the defendant was earning $577,000 in gross income. As years passed, that figure rose precipitously. In 2001, he earned $1.3 million, and his January 27, 2003 financial affidavit indicated a gross income of almost $1.1 million in 2002.

In its oral ruling, the court made the following "findings of fact."[2] The court stated in relevant part: "When the parties began their relationship [the defendant] was making approximately $577,000 per year. . . . The court is aware that over a period of twenty years, there have been cost of living increases, and the value of the dollar has declined. I have not done the math or the research, but $560,000 or $577,000 twenty years ago is probably closely equivalent to $1 million today." Later in the ruling, the court further explained: "If we look at his income in 1982 and we look at his income today,

[2] A finding of fact is clearly erroneous when there is no evidence in the record to support it. *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003).

taking into consideration the cost of living and the value of the dollar today versus twenty years ago, he's probably making, in relative dollars, the same amount or approximately the same amount." The court then qualified that remark by stating, "I'm not making a finding that that's the case because I don't have any evidence. But the court can certainly take judicial notice, and based upon its own observation of the world, that prices have increased and the value of the dollar has decreased, relatively speaking. So, I'm looking at the claims of the plaintiff and although she testified that she helped further [the defendant's] career, and I don't doubt she believes that she did, I cannot make such a finding. His income has remained relatively the same."

Resolution of the plaintiff's claim is controlled by our Supreme Court's decision in *Moore* v. *Moore*, 173 Conn. 120, 376 A.2d 1085 (1977). *Moore* involved a motion to modify the order of support for the plaintiff's minor children. In ruling on the motion, the trial court took judicial notice "of the marked economic inflation and devalued buying power of the dollar from September, 1969 to February, 1974." (Internal quotation marks omitted.) Id., 121. As in the present case, the trial court in *Moore* "did not mention to counsel that it planned to take judicial notice of [that matter]."[3] Id.

On appeal, our Supreme Court noted the "distinction between 'legislative facts,' those which help determine the content of law and policy, and 'adjudicative facts,' facts concerning the parties and events of a particular case." Id., 122. The court explained that "[t]he former may be judicially noticed without affording the parties an opportunity to be heard, but the latter, at least if

[3] "Lack of notice prevents a party from disputing the judicially noticed fact." *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 442, 671 A.2d 1303 (1996).

central to the case, may not." Id.; see also Conn. Code Evid. § 2-2 (b).[4]

The *Moore* court then turned to the issue of inflation. It held that although the "mere fact of inflation" may be judicially noticed without affording the parties an opportunity to be heard, "[t]he extent of that inflation and its effect on the necessary expenses of the parties, however, is open to dispute." *Moore* v. *Moore*, supra, 173 Conn. 123. Accordingly, judicial notice of the effect of inflation on the parties was improper. Id., 123–24.

Just as the extent of inflation and its effect on the expenses of the parties is open to dispute, so, too, is its effect on the defendant's income in the present case. Both are adjudicative facts for which judicial notice is inappropriate. For that reason, we conclude that the court abused its discretion.

It is axiomatic that "[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984). A new trial on all financial issues is therefore required.

The judgment is reversed as to the financial orders only and the case is remanded for a new hearing on all financial issues.

In this opinion the other judges concurred.

---

[4] Connecticut Code of Evidence § 2-2 (b) provides: "Court's initiative. The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned." The commentary explains that "[t]he dichotomous rule in the second sentence represents the common-law view as expressed in *Moore* v. *Moore*, [supra, 173 Conn. 121–22]." Conn. Code Evid. § 2-2 (b), commentary.