KATHLEEN S. WASSON *v.* DAVID F. WASSON
(AC 24521)

Lavery, C. J., and Flynn and Dupont, Js.

---

[10] See footnote 2.

Argued March 30—officially released August 30, 2005

*Lori Welch-Rubin*, with whom, on the brief, was *Gary I. Cohen*, for the appellant (defendant).

*William T. Fitzmaurice*, with whom were *Charles D. Ray* and, on the brief, *Salvatore N. Fornaciari*, for the appellee (plaintiff).

*Ellen B. Lubell*, for the minor children.

*Opinion*

DUPONT, J. The defendant, David F. Wasson, appeals from the judgment of the trial court, rendered on April 23, 2003, dissolving his marriage to the plaintiff, Kathleen S. Wasson, and from the postjudgment order of the court, issued on July 24, 2003.

The defendant has raised four issues on appeal, three of which remain viable. He claims that the court improperly (1) failed to compel the plaintiff to file an updated financial affidavit, (2) failed to modify a pendente lite award for the months of January through April, 2003, and erroneously ordered unallocated alimony in the amount of $12,000 per month,[1] (3) denied his pendente

---

[1] That issue has become moot. We take judicial notice of the order of the court, *Tierney, J.*, filed December 30, 2004, on the defendant's motion for modification, filed July 7, 2003. *Wasson* v. *Wasson*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA-98-0165911-S (December 30, 2004). The Appellate Court, like the trial court, "may take judicial notice of files of the Superior Court in the same or other cases." *McCarthy* v. *Commissioner of Correction*, 217 Conn. 568, 580 n.15, 587 A.2d 116 (1991). We note also that prior to oral argument, counsel for the plaintiff made Judge Tierney's memorandum of decision on the defendant's motion for modification part of the record in this case. The court granted the defendant's motion for modification, and reduced the award of unallocated alimony and child support to the plaintiff to $3000 per month retroactive to November 1, 2004. In its order, the court noted that "[t]he defendant may be in arrears in not only the $11,000 monthly payment commencing June 1, 2004, but the $3000 payment due November 1, 2004, or the defendant may be current in all payments or the defendant may even be entitled to a credit for overpayment. These arrears-credit issues must be resolved by a duly filed motion." *Wasson* v. *Wasson*, supra, Superior Court, Docket No. FA-98-0165911-S. In addition,

lite motion for permission to open the evidence and (4) clarified its judgment to order the plaintiff to select one of two alternatives in connection with its property division orders, resulting in unequal valuations that are inconsistent with the court's original property division order. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our disposition of the defendant's claims on appeal. This highly contested action began on June 2, 1998, when the plaintiff sought to dissolve the parties' marriage. The parties have three minor children, issue of the marriage. Prior to trial, the court ordered the defendant to pay monthly unallocated pendente lite support. On April 23, 2003, the court dissolved the marriage and issued various custodial, visitation and financial orders.

The only orders at issue in this appeal are the court's financial orders. Specifically, the court's financial orders were that (1) the equity in the marital home be divided between the parties, with the defendant receiving one third of the equity and the plaintiff receiving two thirds and (2) that the plaintiff receive one half of the value of the defendant's stocks, stock options and deferred compensation (other assets). The court also found the defendant in contempt for failure to pay an arrearage of $92,000 in pendente lite support and found that the failure contributed to a pending foreclosure action on the marital home.

On January 28, 2003, the defendant filed a pleading titled "Pendente Lite Motion for Permission to Reopen

the court specifically found that "the meager efforts the defendant made to tap the financial markets to obtain employment 'for much greater increase in the future' do not warrant a retroactive modification for the period of July, 2003, through and including October 31, 2004." Id. Neither the plaintiff nor the defendant filed a direct appeal from that order. The order affects and modifies the original order for unallocated alimony and child support, and there is no longer any need to address any failure to modify the order about which the defendant now complains.

Evidence," claiming that there had been a substantial change in the plaintiff's circumstances between the date of her last financial affidavit and the conclusion of the evidence, namely, that the plaintiff had accrued mortgage arrearages on the marital home for each month beginning in September, 2002. On February 6, 2003, the court denied the defendant's motion to open the evidence. On May 12, 2003, the defendant filed postjudgment motions to reargue and for clarification. Specifically, the defendant sought to reargue the court's order (1) concerning the division of the other assets and (2) that the defendant pay off any arrearages and related expenses in connection with the marital residence and the pending foreclosure action. The court granted reargument, for which the parties appeared on June 13, 2003. In a memorandum of decision, filed July 24, 2003, the court, in essence, granted the defendant's motion and issued orders "clarifying and amending" its prior dissolution orders. Specifically, the court ordered that the other assets be divided equally in one of two ways to be chosen by the plaintiff. Both the parties filed motions for articulation and appeared for argument on February 27, 2004. The court granted both motions as set forth in a memorandum of decision filed April 19, 2004. This appeal followed. Additional facts will be set forth as necessary.

I

## FINANCIAL AFFIDAVIT

The defendant claims that the court improperly failed to compel the plaintiff to file an updated financial affidavit, as required by Practice Book § 25-30.[2] We disagree.

[2] Practice Book § 25-30, titled "Statements to Be Filed," provides in relevant part: "(a) At least five days before the hearing date of a motion or order to show cause concerning alimony, support, or counsel fees, or at the time a dissolution of marriage, legal separation or annulment action or action for custody or visitation is scheduled for a hearing, each party shall file, where applicable, a sworn statement substantially in accordance with a form prescribed by the chief court administrator, of current income,

First, Practice Book § 25-30 (a) expressly provides in relevant part that the court *may* "render . . . permanent orders, including judgment, in the absence of the opposing party's sworn statement." As such, the court had no obligation to compel the plaintiff to provide an updated financial affidavit before rendering its judgment of dissolution. Second, the defendant twice raised the issue in open court, and on both occasions the court left it to the plaintiff's counsel to determine whether an updated financial affidavit was necessary. The defendant did not object, nor did he file a request for production pursuant to Practice Book § 25-32.[3] To the extent

expenses, assets and liabilities. When the attorney general has appeared as a party in interest, a copy of the sworn statements shall be served upon him or her in accordance with Sections 10-12 through 10-17. Unless otherwise ordered by the judicial authority, all appearing parties shall file sworn statements within thirty days prior to the date of the decree. *Notwithstanding the above, the court may render pendente lite and permanent orders, including judgment, in the absence of the opposing party's sworn statement.*" (Emphasis added.)

[3] Practice Book § 25-32, titled "Mandatory Disclosure and Production," provides: "(a) Unless otherwise ordered by the judicial authority for good cause shown, *upon request by a party involved in an action for dissolution of marriage,* legal separation, annulment or support, or a postjudgment motion for modification of alimony or support, opposing parties shall exchange the following documents within thirty days of such request:

"(1) all federal and state income tax returns filed within the last three years, including personal returns and returns filed on behalf of any partnership or closely-held corporation of which a party is a partner or shareholder;

"(2) IRS forms W-2, 1099 and K-1 within the last three years including those for the past year if the income tax returns for that year have not been prepared;

"(3) copies of all pay stubs or other evidence of income for the current year and the last pay stub from the past year;

"(4) statements for all accounts maintained with any financial institution, including banks, brokers and financial managers, for the past 24 months;

"(5) the most recent statement showing any interest in any Keogh, IRA, profit sharing plan, deferred compensation plan, pension plan, or retirement account;

"(6) the most recent statement regarding any insurance on the life of any party;

"(7) a summary furnished by the employer of the party's medical insurance policy, coverage, cost of coverage, spousal benefits, and COBRA costs following dissolution;

that the defendant did not voice his dissatisfaction with the court's response, we must presume that he found it satisfactory. Finally, the defendant's brief does not address how such action constituted an abuse of discretion or how he was harmed by it.

## II

## JUDGMENT OF DISSOLUTION

The defendant claims that the court improperly denied his motion to open the evidence "in order to present to the court evidence concerning [the] Plaintiff's failure to make the mortgage payments or to inform the Court or the Defendant of the accumulated arrearage on the mortgage."[4] Related to that claim, the defendant asserts that the court improperly took judicial notice in its judgment rendered on April 23, 2003, of a pending foreclosure action against the parties from which the court made substantive findings of fact adverse to his position. We address those two related claims together.

"Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion. . . . In the ordinary situation where a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided. . . . Accordingly, we review the trial court's action here under an abuse of discretion standard. . . . When reviewing a decision

---

"(8) any written appraisal concerning any asset owned by either party.

"(b) Such duty to disclose shall continue during the pendency of the action should a party appear. This section shall not preclude discovery under any other provisions of these rules." (Emphasis added.)

[4] The defendant was an obligor on the mortgage note and a named defendant in the foreclosure action.

for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Citations omitted; internal quotation marks omitted.) *Ford* v. *Ford*, 68 Conn. App. 173, 185–86, 789 A.2d 1104, cert. denied, 260 Conn. 910, 796 A.2d 556 (2002).

The evidence in this case concluded on January 3, 2003. On January 28, 2003, the defendant filed a motion to open the evidence in which he stated that there had been a substantial change in the plaintiff's financial circumstances. The defendant asserted that the plaintiff had fallen into arrears on the mortgage payments on the marital home, causing the bank that held the first mortgage to bring a foreclosure action against the parties. The defendant sought permission from the court to "reopen the evidence in order to present to the court evidence concerning [the] [p]laintiff's failure to make the mortgage payments or to inform the Court or the Defendant of the accumulated arrearage on the mortgage." At the time the defendant made his motion, the court had not yet issued its April 23, 2003 memorandum of decision, which contained the judgment of dissolution and orders regarding child support, alimony and the equitable distribution of property.

Our review of the record reveals that at the close of the evidence, the court had before it, inter alia, the following evidence: (1) the plaintiff's sole source of income was the unallocated alimony and child support of $40,000 per month; (2) the defendant had stopped paying that amount in September, 2002, resulting in an actual arrearage in the fourth quarter of 2002 of $92,000; (3) the plaintiff's monthly expenses, including the mortgage payment on the marital residence, were $31,867. On the basis of that evidence alone, the court reasonably could have concluded that the plaintiff was unable to meet her monthly financial obligations. Indeed, in connection with the plaintiff's financial circumstances, counsel for the plaintiff stated to the court: "Your Honor

knows the major thing that is different on [the plaintiff's] financial affidavit because we've been through this. There's a \$92,000 arrearage with respect to that, so the court can reasonably infer that there are probably some bills that didn't get paid."

There was no danger that a miscarriage of justice would result from the absence of further evidence concerning the plaintiff's failure to meet her monthly financial obligations and, specifically, the existence of the pending foreclosure action. See *Ford* v. *Ford*, supra, 68 Conn. App. 185. We conclude that the court did not abuse its discretion in denying the defendant's motion to open the evidence prior to judgment to introduce evidence regarding the failure of the plaintiff to make mortgage payments. The court was well within its broad discretion in concluding that any such additional evidence would not have a significant impact on its decision.

We next address the defendant's claim that the court improperly took judicial notice of the foreclosure action. "There is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 678 n.7, 830 A.2d 193 (2003). "Notice to the parties is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing." (Citations omitted.) *Moore* v. *Moore*, 173 Conn. 120, 121–22, 376 A.2d 1085 (1977); see also *Izard* v. *Izard*, 88 Conn. App. 506, 509, 869 A.2d 1278 (2005); Conn. Code Evid. § 2-2 (b). A trial court's determination as to

whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. *Jewett* v. *Jewett*, supra, 679 n.7. "Trial courts have broad discretion in determining the relevancy and admissibility of evidence. . . . In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 594, 783 A.2d 1001 (2001).

The issue centers on the court's orders regarding property distribution of the marital home. In its dissolution orders, issued April 23, 2003, the court provided the plaintiff with "a six month period in which to transfer to the defendant his one-third share of the $1,662,000 equity in the house, subject to certain adjustments for arrearages and related expenses." In a footnote to that order, the court noted: "The plaintiff's last financial affidavit listed pendente lite support as her only source of income, bank accounts totaling slightly more than $25,000, cash on hand of $16,000 and personal property worth slightly more than $100,000. The defendant's arrearage in his pendente lite support obligation therefore may reasonably be inferred to have affected her continuing ability to meet all her monthly expenses, although it is possible that she may have liquidated resources to do so. From this inference, the court also infers that there may at present be arrearages owing on the first mortgage and home equity loan. The court takes judicial notice that a foreclosure action brought by the first mortgagee is currently pending against both parties in the judicial district of Stamford-Norwalk, *Citimortgage* v. *Wasson*, Docket No. CV-03-0193428-S. The plaintiff would have had sufficient funds to meet the mortgage and home equity obligations if the defendant had remained current in his pendente lite support. The court's orders will make the plaintiff responsible for paying any arrearage in either mortgage obligation, but

the defendant [will be] responsible for all late charges, court costs or counsel fees incurred as the result of any late or nonpayment of those obligations."

The court then issued the following order: "In view of the pending foreclosure on the marital premises and the need to preserve the full value of the parties' equity, the court's orders will also direct the defendant, who has the most assets readily available to take all immediate steps necessary to pay all arrearages due on the mortgage and home equity loan. Any such payments he makes will entitle him to corresponding adjustments in his share of the equity."

The defendant claims, in essence, that on the basis of the pending foreclosure action, of which the court took judicial notice after the close of evidence, the court made a substantive finding that adversely affected him without affording him the opportunity to present evidence on the issue. We do not agree. We note first that in his motion to open the evidence, filed approximately four months prior to the court's issuing its dissolution orders,[5] the defendant himself alerted the court to the fact that the bank holding the first mortgage on the marital home had commenced foreclosure proceedings against the parties. Furthermore, the court limited

[5] We note that in the defendant's postjudgment motion to reargue, filed May 12, 2003, the defendant asserted that "[t]he Court . . . referred to a pending foreclosure action affecting the marital premises and ordered the Defendant to immediately make any payments necessary to pay off any arrearages and related expenses." The defendant claimed that because the court had no evidence before it at the time of trial that there was a pending foreclosure or that there were arrearages and late charges related thereto, the court did not have a record on which to allocate to him responsibility for the payment of arrearages and expenses.

At the time the court issued its memorandum of decision, dated April 23, 2003, it was aware of the foreclosure action because the defendant, in his motion to open the evidence, filed January 28, 2003, had stated that the bank holding the first mortgage on the marital home had commenced foreclosure proceedings. It was, therefore, the defendant who apprised the court of the pending foreclosure action.

its exercise of judicial notice to the "established fact" of the foreclosure action without making any additional substantive findings adverse to the defendant on the basis of the fact judicially noticed. We conclude that the court did not abuse its discretion when it took judicial notice of the pending foreclosure action against the parties.

Even were we to conclude that the court abused its discretion in taking judicial notice of the foreclosure action without notifying the parties of its intention to do so, we conclude that the defendant has failed to demonstrate that the court's action harmed him. The defendant refers to the court's order directing him to pay all arrearages due on the mortgage loan. The court made that order in an attempt to preserve the equity in the marital home, of which the defendant was entitled to one third. The court also stated that any amount paid by the defendant toward the mortgage arrearages would "entitle [the defendant] to corresponding adjustments in his share of the equity." The court, therefore, did not penalize the defendant for the mortgage arrearages but simply ordered him, because he had "the most assets readily available," to pay off the arrearages in order to prevent the parties from losing the equity in the marital home. The defendant, therefore, suffered no harm as a result of the court's decision to take judicial notice of the pending foreclosure action and its subsequent order directing him to pay off any mortgage arrearages.

### III

### POSTJUDGMENT ORDERS

The defendant claims that in response to his motions for clarification and reargument, the court, in effect, improperly modified its original order for the division of property and assets,[6] thereby creating "two unequal

---

[6] A trial court has no jurisdiction to modify assignments of property as distributed in the original dissolution judgment and may make only such orders as to protect the integrity of the original judgment. *Santoro* v. *Santoro*,

property divisions." In response, the plaintiff asserts that the court did not modify its judgment, but rather "entered orders specifically tailored to respond to [the defendant's] request that the court explain how those orders were to be implemented." We agree with the plaintiff.

Regardless of how the defendant characterizes the court's response to his motions for clarification and reargument, "we must examine the practical effect of the trial court's ruling in order to determine its nature. Only then can we determine whether the ruling was proper. . . . A modification is defined as [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . .

"Conversely, the purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . A reconsideration implies reexamination and possibly a different decision by the [court] which initially decided it. . . . While a modification hearing entails the presentation of evidence of a substantial change in circumstances, a reconsideration hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law." (Citations omitted; internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202–203, 655 A.2d 790 (1995).

The principal issue here is whether the court modified its dissolution orders or simply effectuated its prior

70 Conn. App. 212, 216–17, 797 A.2d 592 (2002). Unlike periodic alimony, property distribution awards cannot be modified. *Simmons* v. *Simmons*, 244 Conn. 158, 182–83, 708 A.2d 949 (1998).

judgment by ordering two alternatives from which the plaintiff could choose to satisfy the court's previous orders. The defendant's motion for clarification asked the court to clarify (1) the date on which the other assets should be valued, (2) whether the transfer to the plaintiff should be in cash or in kind and (3) if in cash, whether the amount transferred should be pretax or after tax. The defendant asserted that in ordering the parties to divide the other assets equally, the court failed to take into account the cost of liquidating those assets and the responsibility for the payment of capital gains and income taxes. "We have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) *Roberts* v. *Roberts*, 32 Conn. App. 465, 471, 629 A.2d 1160 (1993).

The court's original decree was issued April 23, 2003. As relevant to the claim of the defendant, it provided for the equitable distribution of property, including the marital home and other assets. The equity in the marital home was to be "divided between the parties such that [the] defendant receives one third and the plaintiff two thirds of the equity therein, subject to adjustments set forth in [the] orders."[7] The judgment also provided that the "plaintiff shall receive one-half the value listed on the defendant's November 2, 2002 financial affidavit," consisting of stocks, options and deferred compensation.[8] The original judgment provided for distribution of the parties' share of the equity in the marital home

---

[7] The adjustments concern expenses assigned as the responsibility of one party, but which have not been paid by that party, and payments for the exclusive use of the home after the date of the judgment.

[8] The relevant portion of the court's original judgment as to other assets is contained in part C (b) (1) (a), (b) and (c). Subsection (c) provided for the effectuation of the transfer to the plaintiff.

and specifically provided for the methods by which that could be accomplished.[9]

On July 24, 2003, after the original judgment of April 23, 2003, in response to the defendant's postjudgment motions to reargue and for clarification, the court issued the orders that are the basis of the defendant's claim. The question raised is whether the alternatives for implementing the court's order as prescribed in the court's memorandum of decision in response to the defendant's motions were a means of effectuating its original judgment or a modification of it. In order to answer that question, we must compare the original judgment with the court's clarification of its prior orders as to the distribution of the marital home and other assets.

The clarification, issued July 24, 2003, provides in relevant part: "a. First Alternative: The plaintiff may

[9] In part C (a) (4) (a) and (b) of the court's memorandum of decision, the court provided two alternatives by which the parties could satisfy the distribution of the parties' share of the equity: "(a) Payment by the plaintiff of the defendant's share: If the plaintiff transfers the sum of $554,000, adjusted as required in these orders, to the defendant by the last day of the sixth month following issuance of this decision, the defendant shall simultaneously convey by quitclaim deed all of his right, title and interest in such property, and the plaintiff shall thereafter indemnify and hold the defendant harmless thereon. During that six month period, the defendant shall cooperate with any efforts of the plaintiff to refinance said property.

"(b) Sale of marital home: If the plaintiff does not so transfer said sum to the defendant by that date, the court orders the parties to sell the marital home. The parties are to cooperate in the listing, showing and closing of the property. The parties shall immediately list the property for sale at its fair market value with a real estate agent familiar with real property values in the Greenwich area. If the parties cannot agree on a listing broker, price, terms of the listing or like details, either party may move this court for further orders. The parties shall accept the first bona fide offer within 5 percent of the asking price. Upon sale of the home, the plaintiff shall receive two-thirds and the defendant one-third of the net proceeds after all expense from sale of the home (gross proceeds less Realtor commissions, attorney fees for sale, conveyance taxes and recording charges) have been paid, subject to adjustments set forth in these orders. The court retains jurisdiction over the issue of the sale of the house."

subtract the gross, pretax amount of the value of those assets, as set forth in the defendant's November, 2002 financial affidavit, from that portion of the equity in the marital home that she must transfer to the defendant pursuant to the court's orders. If the plaintiff elects this alternative, the defendant is under no obligation to transfer to her any portion of these particular assets before such date. To the extent that the defendant's share of equity is less than the amount of these assets he must transfer to her, the balance of her share shall be transferred to her pursuant to the second alternative.

"b. Second Alternative: The defendant shall transfer to the plaintiff one-half the net value, after taxes incurred by the defendant in connection with the sale or cashing in of such assets, of each of those assets, each of which the defendant shall sell or cash in at the first time he is able to do so. The plaintiff shall receive her share of each asset within two weeks of the defendant's cashing in or sale of each asset. If the plaintiff elects this option, the defendant shall give the plaintiff a copy of his tax returns for each year in which he sells or cashes in such an asset simultaneously with his filing of each such return.

"2. The plaintiff shall notify the defendant in writing within thirty days which alternative she has elected.

"3. The $80,000 that the defendant withdrew from the Morgan Stanley brokerage account and from which he then paid the plaintiff $40,000, both as agreed to by the parties and ordered by the court during trial, shall not be counted in determining her one-half share of that account."

A

First Alternative

In its clarifying memorandum of decision, the court provided for an implementation of the court's original order relating to the marital home. It established "two

times and methods of distribution," depending on whether the plaintiff decided to keep, rather than sell, the marital home. That same option was provided to the plaintiff in the original judgment.[10] The first method of implementing the court's original order, if she decided to keep the home, was to subtract the gross, pretax value of the one-half share of the other assets from the $554,000 she was required to transfer to the defendant for his one-third share in the equity in the marital home. That is duplicative of the original order.[11] The court then added to its original order by stating that if the plaintiff elects that alternative, namely, keeping the marital home, the defendant is under no obligation to transfer to her any portion of the other assets listed in the defendant's financial affidavit of November, 2002. If the defendant's share of the equity is less than the amount of the share of the other assets to which the plaintiff is entitled, the defendant must transfer to the plaintiff the balance of the share due her for her two-thirds share of the equity in the marital home pursuant to the second method of implementing the court's second option.

The defendant argues that the court permitted the plaintiff to deduct one half of the gross value of the other assets from his share of the equity in the marital home, which he claims is unfair. Specifically, the defendant claims that this is unfair because he could not transfer to the plaintiff her one-half share in the other assets without incurring significant tax liabilities and transaction costs. The first alternative of the court's clarification order did not require the defendant to liquidate any assets but allowed the plaintiff the option of not selling the home.[12] No transfer of assets is involved unless the defendant's share in the equity is less than

---

[10] See footnote 8.

[11] See footnote 8.

[12] As far as this court is aware, the foreclosure action against the parties remains pending.

the amount of assets he was ordered to transfer to her originally. In that event, the plaintiff's share was to be transferred in accordance with the second alternative. The defendant would not actually incur any tax liability because the court's first alternative did not require the plaintiff to sell the marital home. Both the value of the home and the other assets had a fixed, pretax value, which the first alternative did not disturb. The first alternative, therefore, was not a "new judgment," but rather a clarification of the April 23, 2003 judgment.

## B

### Second Alternative

The original judgment provided that one half of the other assets of the defendant should be transferred to the plaintiff. The court, in its response to the defendant's motion for clarification, did not change that allocation but expanded on how that allocation would be accomplished if the plaintiff chose to sell the marital home. In order to equalize the effect of taxes on any transfer to the plaintiff of those assets, the court provided that the plaintiff would receive one half of the net value of any assets transferred to her so that the tax consequences would fall equally on both parties. The second alternative, therefore, did not disturb the court's original judgment that gave each party one half of the other assets. It clarified the original order to make clear that the defendant would not bear the entire tax liability for the transfer. The court's orders of July 24, 2003, did not interfere with the terms of the original dissolution orders. We conclude that the court's orders on that date, rendered in response to the defendant's motions to reargue and to clarify, effectuated rather than modified the orders of April 23, 2003. See *Roberts* v. *Roberts*, supra, 32 Conn. App. 472.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

FLYNN, J., concurring. I concur in the result reached, but write separately because I do not concur with some of the reasoning adopted by the majority.

I first address the court's taking of judicial notice of a pending foreclosure after the close of evidence, without prior notice to the parties, when it previously had refused to grant the defendant's motion to open to present evidence about the pendency of that very foreclosure and the circumstances surrounding it. Although "[t]he court may take judicial notice without a request of a party to do so . . . [p]arties are entitled to receive notice and an opportunity to be heard for matters susceptible of explanation . . . ." C. Tait, Connecticut Evidence (3d Ed. 2001) § 2.6.1 (b), p. 116. There certainly was some explanation possible as to whether the foreclosure resulted from the defendant's failure to make payments. Even when a fact is not open to argument, it may be better practice to give the parties an opportunity to be heard. *Moore* v. *Moore*, 173 Conn. 120, 122, 376 A.2d 1085 (1977). Under the circumstances, I would conclude that the court improperly took judicial notice of the pending foreclosure after the close of evidence and after denying the defendant the right to introduce evidence of the pendency of the same foreclosure and to present evidence concerning the plaintiff's failure to make timely mortgage payments or to inform the defendant of the accumulated arrearage on the mortgage. Although I would conclude that the ruling was improper, I would not reverse the judgment on that basis because the defendant has not shown how he was harmed by the ruling.

Finally, I would conclude that the court modified its original order and, therefore, disagree with the majority's conclusion that it "did not disturb the court's original judgment . . . ." As the majority notes, the original judgment "provided two alternatives by which the par-

ties could satisfy the distribution . . . ." After the court's modification, there are three. Unlike the original judgment, the second alternative contains two possible ways of implementation, the choice of which is left to the plaintiff. I would not reverse the judgment on this basis because the defendant requested reargument of that issue and received the reconsideration he requested.

In his motion to reargue, the defendant specifically asked the court, inter alia, to allow him to reargue the distribution of the "other assets" because of the tax implications of liquidating those assets. The court, in fact, did allow the defendant to reargue this issue, and then it clarified its judgment as to how the property would be divided to balance any tax implications for both parties. The judgment continued to provide exactly the same division of the property—the marital home was divided one third to the defendant, two thirds to the plaintiff, and the "other assets" were divided one half to the plaintiff, one half to the defendant—but the method of distribution was clarified or modified to effectuate the judgment.

In addition, and perhaps more importantly, the court's second memorandum of decision was in response to the defendant's reargument on the issue of the method of effectuating the property distribution, in which the defendant asked the court to take into account that he would have serious tax implications if he liquidated the "other assets," which the court had not addressed in the original judgment. The court agreed with the defendant's argument and gave several alternative methods of distribution, taking into account the tax implications as requested by the defendant. For the defendant to claim now that this was an improper modification, after timely filing a motion to reargue addressed to this specific issue, is a bit disingenuous. Upon reargument, the defendant asked the court to

take the tax implications of liquidating his assets into consideration and the court did just that. See *Hartney* v. *Hartney*, 83 Conn. App. 553, 561, 850 A.2d 1098 (court affirmatively responded to request for reargument and reconsideration, complaining defendant received what he requested, a reconsideration), cert. denied, 271 Conn. 920, 859 A.2d 578 (2004).

Except as stated, I agree with the majority and also would affirm the judgment.