******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHRISTINE L. FERRARO *v.* DAVID FERRARO, JR.
(AC 38082)

DiPentima, C. J., and Keller and Mullins, Js.

*Argued May 23—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Shah, J.)

*John F. Morris*, for the appellant (defendant).

*Michael D. Day*, for the appellee (plaintiff).

*Opinion*

KELLER, J. In this marital dissolution action, the defendant, David Ferraro, Jr., appeals from the judgment of the trial court with respect to the court's financial orders. The defendant claims that the court improperly (1) made factual findings with respect to his net income without evidentiary support, and (2) entered an order regarding expenses for the minor children's extracurricular activities when neither he nor the plaintiff, Christine L. Ferraro, had requested such an order. We agree with the defendant and, accordingly, reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The court dissolved the parties' twenty-one year marriage on May 6, 2015. At the time of the dissolution, the parties had two minor children, ages fifteen and thirteen. In its memorandum of decision, the court found that the marriage had broken down irretrievably and attributed "greater responsibility to the plaintiff" for "the collapse of their marital union . . . ."[1] The parties' custody and parenting agreement was approved by the court, *Morgan, J.*, prior to the beginning of the two day trial, and was incorporated by reference into the judgment of dissolution by the court, *Shah, J.* With respect to the remaining issues, the court entered financial orders for child support, alimony, and the division of property. The plaintiff was awarded periodic alimony for a period of twelve years. The defendant was ordered to pay $500 per week for the first two years and $450 per week for the remaining ten years. The defendant was ordered to pay child support in the amount of $310 per week in accordance with the child support guidelines worksheet dated April 28, 2015, which had been prepared by or at the direction of the court. The alimony and child support orders were based on the court's factual findings that the defendant's weekly net income was $1408, and the plaintiff's imputed weekly net income was $428.[2] In addition to other orders relating to, inter alia, health insurance, unreimbursed medical and dental expenses, and the division of the defendant's pension benefits, the court entered an order for the sharing of expenses for the children's extracurricular activities.

The defendant filed a motion for reconsideration and reargument on May 18, 2015, claiming that the court's orders were "inconsistent with the evidence" and failed to leave the defendant with sufficient income for his living expenses. The defendant additionally claimed that the order for extracurricular activity expenses was improper because neither party had requested such an order. The court denied the defendant's motion without explanation. This appeal followed.

The defendant filed his appeal on June 25, 2015. On July 29, 2015, the defendant filed a motion for articula-

tion, requesting, inter alia, that the trial court articulate (1) the reason for using a child support guidelines worksheet prepared by a family services supervisor to determine net income rather than the evidence submitted by the parties at trial, (2) the evidential sources for the court's "figures used for taxes and deductions," and (3) the reason the court failed to include its alimony award as an income source for the plaintiff when it calculated how the uninsured health care costs for the minor children were to be divided between the parties.

On September 4, 2015, the court granted the defendant's motion and provided the following articulation of its orders: (1) "the court had the appropriate child support guidelines worksheet . . . prepared based on evidence and testimony provided at trial"; (2) "the court based all of its findings on evidence and testimony provided at trial, including the financial affidavits provided by the parties . . . and used family law software provided by the judicial branch" as sources for the figures on the worksheet for taxes and deductions; and (3) upon further review of the court's worksheet, the court "modifie[d]" its orders with respect to the allocation of unreimbursed medical expenses. Attached to the court's September 4, 2015 order was a child support guidelines worksheet dated September 4, 2015, which included assumptions regarding the number of personal and dependent exemptions for each party, itemized deductions, refundable credits and tax deductions. The defendant did not file a motion for review of the trial court's articulation with this court, nor did he amend his appeal to include an issue relative to the court's modification of the original judgment of dissolution in the September 4, 2015 articulation.[3]

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court' findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *Mensah* v. *Mensah*,

145 Conn. App. 644, 651–52, 75 A.3d 92 (2013).

"We next note that our review of financial orders entered by a trial court in a dissolution matter is governed by the mosaic doctrine. Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Internal quotation marks omitted.) *Valentine* v. *Valentine*, 149 Conn. App. 799, 803, 90 A.3d 300 (2014).

## I

The defendant's first claim is that the court improperly made factual findings with respect to his net income without evidentiary support. Specifically, the defendant argues that the court based its factual finding of his weekly net income "on a child support guidelines worksheet created after the close of evidence, using information not found in the evidence." The court's May 6, 2015 memorandum of decision refers to the April 28, 2015 worksheet, although it does not identify the author of the worksheet. The worksheet itself, which was not appended to the decision, indicates that it was "prepared by Connecticut Judicial Service Center." The defendant maintains that the court relied on calculations generated by a software program posttrial, and not on the evidence submitted in the parties' financial affidavits or evidence presented at trial, so that he had no opportunity to present evidence to challenge or rebut the court's calculations.[4]

It is undisputed that the court relied on the April 28, 2015 worksheet in determining the weekly net incomes of the parties. It also is evident, from a careful review of the parties' testimony, financial affidavits and the exhibits submitted at trial, that the figures in the worksheet do not match the figures provided by the parties at trial. The defendant's April 14, 2015 financial affidavit showed a net weekly income of $1077.10 after his mandatory deductions. The court, using different figures for the defendant's federal and state income tax deductions, found that the defendant's net weekly income was $1408. There is no explanation, in the court's May 6, 2015 memorandum of decision or the court's September 4, 2015 articulation, as to how the court arrived at its figures or the basis for the court's failure to use the figures submitted at trial. The court's figures are not identified as to origin or explained as to content. In scrutinizing the attachments to the court's articulation, which were provided months after the judgment of dissolution was rendered, it appears that the court sua sponte made various assumptions regarding standard

and itemized deductions, medical expenses and child credits. From the record, it is clear that the defendant had no opportunity to challenge or rebut the court's assumptions and calculations.

The alimony and child support orders entered by the court were based on its factual findings as to the weekly net income of the parties. "It is well settled that a court must base child support and alimony orders on the available net income of the parties, not gross income." (Internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 209, 61 A.3d 449 (2013). "[W]hile our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific." *Hughes* v. *Hughes*, 95 Conn. App. 200, 204, 895 A.2d 274, cert. denied, 280 Conn. 902, 907 A.2d 90 (2006). Although the child support guidelines "create a legal presumption as to the amount of child support payments . . . the figures going into that calculation on the worksheet must be based on some underlying evidence." (Citation omitted.) *Aley* v. *Aley*, 101 Conn. App. 220, 228–29, 922 A.2d 184 (2007). "A court may not rely on a worksheet unless it is based on some underlying evidence." (Internal quotation marks omitted.) *Barbour* v. *Barbour*, 156 Conn. App. 383, 391, 113 A.3d 77 (2015). In the present case, the court's figures do not match the figures on the parties' financial affidavits. Moreover, there was no testimony or other evidence presented at trial with respect to alternate federal and state tax calculations, exemptions, deductions or credits. Simply put, there is nothing in the underlying evidence to support the court's figures in the worksheet.[5]

In the court's articulation, it states that it relied on the "evidence and testimony provided at trial, including the [parties'] financial affidavits" in calculating the amount of the defendant's weekly net income. This statement is not supported, however, by the figures provided in those affidavits when compared with the court's April 28, 2015 worksheet, and by a review of the testimony at trial and the exhibits submitted to the court. The figures do not match and, although the court is free to credit or discredit some or all of a witness' evidence; *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 878, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); the court still must provide a basis for the determinations that it makes as supported by the underlying evidence.

It is possible that the court, in selecting the figures used for the calculation of net income, took judicial notice of the Internal Revenue Code, the tax tables or some other relevant depository of information. The court did not indicate, however, either in its memorandum of decision or in its articulation, that it had taken judicial notice of any supplemental information in

reaching its determinations. If the court did take judicial notice of certain facts, it should have notified the parties that it intended to do so and provided them with the opportunity to be heard.[6]

"Notice to the parties is not always required when a court takes judicial notice. Our own cases have attempted to draw a line between matters susceptible of explanation or contradiction, of which notice should not be taken without giving the affected party an opportunity to be heard . . . and matters of established fact, the accuracy of which cannot be questioned, such as court files, which may be judicially noticed without affording a hearing." (Citations omitted.) *Moore* v. *Moore*, 173 Conn. 120, 121–22, 376 A.2d 1085 (1977). "There are two types of facts considered suitable for the taking of judicial notice: those which are 'common knowledge' and those which are 'capable of accurate and ready demonstration.' McCormick, Evidence (2d Ed.) § 330, p. 763. Courts must have some discretion in determining what facts fit into these categories. It may be appropriate to save time by judicially noticing borderline facts, so long as the parties are given an opportunity to be heard." Id., 123 n.1. There also is a distinction between "legislative facts," those which help determine the content of law and policy, and "adjudicative facts," those concerning the parties and events of a particular case. The former may be judicially noticed without affording the parties an opportunity to be heard, but the latter may not, at least if they are central to the case. See *Izard* v. *Izard*, 88 Conn. App. 506, 509–510, 869 A.2d 1278 (2005).

In the present case, the court did not state whether it had taken judicial notice of certain facts to make its determination with respect to the defendant's weekly net income. If it did, it is not possible to determine, without speculation, the facts that were judicially noticed and how the court's calculations incorporated that information. What is known is that the court prepared its own child support guidelines worksheet, but did not attach that worksheet to its May 6, 2015 memorandum of decision. The defendant filed a motion for reconsideration and reargument, but the court denied that motion without explanation. The court did attach the worksheet to its September 4, 2015 articulation, but the parties were never notified of the judicially noticed facts upon which the court relied nor were they provided with an opportunity to challenge or rebut the court's calculations.

In summary, the court's finding as to the defendant's weekly net income is without evidentiary support. The federal and state tax deduction figures used by the court to determine net income, as reflected in its April 28, 2015 child support guidelines worksheet, did not come from the parties' testimony at trial, the exhibits submitted, or the parties' financial affidavits. There is no evi-

dentiary basis for the court's determination. If the court took judicial notice of supplemental information, it provided no notice to the parties that it was doing so, nor did it provide them with an opportunity to challenge or rebut that information. Accordingly, the court abused its discretion, and we must remand the matter for a new hearing.

## II

The defendant's next claim is that the court improperly entered an order regarding extracurricular activity expenses for the minor children when neither party had requested such an order.[7] Specifically, the defendant argues that the court, in its order,[8] did not set any limit on the cost of the activities, "thereby creating an open ended obligation." He claims the order was entered without any basis because no party requested it and there was no evidentiary support for it. We agree.

As previously noted, the parties stipulated to terms in a custody and parenting agreement that was approved by the court and incorporated by reference into the judgment of dissolution.[9] There is no provision in that agreement that addresses the extracurricular activities of the minor children. Further, in the financial affidavits submitted by the plaintiff and the defendant, no expenses are listed for extracurricular activities. Each party submitted proposed orders to the court, and neither party requested an order with respect to extracurricular activity expenses. A review of the transcript of the two day trial reveals that no testimony was presented as to the extracurricular activities undertaken by the children, let alone what the expenses of such activities would be. Simply put, there is no evidence supporting the need for an order that allocates the expenses of extracurricular activities between the parties.

We conclude, therefore, that the court abused its discretion in fashioning its financial orders. Accordingly, we remand the case for a new hearing on all financial issues.

The judgment is reversed only with respect to the financial orders and the case is remanded for a new hearing on all financial issues; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court made the following finding in its memorandum of decision: "The breakdown of the marriage is due to several reasons, including, among other causes, the plaintiff's jealousy and financial mismanagement and the defendant's anger, and both parties bear responsibility for the collapse of their marital union, although the court attributes greater responsibility to the plaintiff for the numerous yet unsubstantiated allegations of infidelity and abuse and the stress that caused the relationship between not only the parties but between the children and the defendant . . . ."

[2] The plaintiff had worked from the beginning of the parties' marriage until 2011. She was unemployed when she commenced the present action on May 8, 2014. On August 21, 2014, the court, *Alander, J.*, ordered the plaintiff to seek employment, to document her efforts, and to report back

to the court on September 18, 2014. She then worked for a period of two weeks in 2014, but was terminated from her employment for excessive absenteeism.

In its memorandum of decision, the court made the following finding: "Despite being under court order, the plaintiff has failed to maintain employment and has not provided any credible evidence of reasonable efforts to obtain employment." Accordingly, "[b]ased upon the plaintiff's work history and her recent employment, the plaintiff has the ability to work full-time at a rate of $11.50 hourly . . . and [the court] imputes such earning capacity to the plaintiff."

[3] For this reason, we do not consider one of the defendant's claims raised in this appeal. The defendant argues that the court improperly modified the judgment in its September 4, 2015 articulation. Citing *Koper* v. *Koper*, 17 Conn. App. 480, 484, 553 A.2d 1162 (1989), for the principle that "[a]n articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision," the defendant claims that the court's sua sponte modification of the order in the judgment with respect to the allocation of unreimbursed medical expenses for the minor children was improper. Aside from the fact that the sua sponte modification actually benefitted the defendant by reducing his share of the costs, the defendant failed to preserve the issue for this appeal, and we decline to review it. See *Webster Trust* v. *Mardie Lane Homes, LLC*, 93 Conn. App. 401, 402 n.3, 891 A.2d 5 (2006).

[4] One of the defendant's claims is that the trial court delegated the creation of the April 28, 2015 worksheet to a third party, thereby resulting in "an improper delegation of a fundamental judicial function." We are not persuaded.

"It is well settled authority that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended." (Internal quotation marks omitted.) *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004).

In the court's September 4, 2015 articulation, it stated that it "had the . . . worksheet . . . prepared" using the evidence and testimony presented at trial. Further, the court stated that it based its findings on the evidence and testimony presented at trial, including the parties' financial affidavits, and that it "used family law software provided by the judicial branch . . . ." There is nothing in the record that indicates that the court did not select the figures inputted into the computer program for the calculations on the worksheet.

[5] The plaintiff argues that the court was not obligated to accept the defendant's representations on his April 14, 2015 financial affidavit as to his federal and state tax deductions, and that the court could have concluded, from the defendant's testimony at trial with respect to tax refunds, that he was overwithholding. This argument is not persuasive because the court, which did not explain the figures used in its calculations, did not even mention tax refunds in its memorandum of decision.

The defendant testified that he and the plaintiff received a $10,000 refund in 2013 for the tax year 2012, when the parties were an intact family and filed jointly. He testified that they used the money to pay household expenses. The defendant also testified that he was entitled to a tax refund in 2014, but that the money went directly to the state to satisfy a lien filed against him by the state to reimburse monetary assistance paid to the plaintiff. The evidence at trial revealed that the plaintiff had applied for and received more than $11,000 of state assistance during the term of the marriage on the basis of her claim that the defendant was not supporting her and the children. At trial, the defendant submitted bank statements that he countered proved that he regularly had been providing for his family's support. In any event, the amount of the 2014 refund never was disclosed, nor was there any testimony about the amounts of tax refunds, if any, received in prior years.

[6] Section 2.2 (b) of the Connecticut Code of Evidence provides: "The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned."

In this case, the figures used by the court plainly contradicted the figures in the financial affidavits submitted at the time of trial.

[7] Although our disposition of the defendant's first claim disposes of this

appeal, we will address his second claim because it is likely to arise on remand.

[8] The court entered the following order: "The parties shall discuss, in advance, any extracurricular activity, enrichment program and/or summer camp activities for the benefit of the minor children. Only such activities as may be agreed upon by the parties shall be considered an approved activity for enforcement of these orders, but neither party may unreasonably withhold his or her approval. The cost of all approved activities will be shared equally by the parties. Any activity not approved by both parties may still be engaged in by the child, on the following two conditions: (1) the cost is covered entirely by the party approving the activity; and (2) the activity does not interfere with the parenting access time of the other parent."

[9] We note that the custody and parenting agreement expressly provides that it constitutes "a final resolution of [the parties'] parenting issues." Moreover, the agreement contains a paragraph regarding participation in family therapy and provides that the parties are to share the costs of such therapy in accordance with the child support guidelines. If the parties wanted the court to enter an order with respect to the allocation of expenses for extracurricular activities, this agreement would have provided the logical procedural vehicle for such a request.

_____