******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGALIS, LLC *v.* MICHELLE LEE
VAZQUEZ ET AL.
(AC 44500)

Elgo, Moll and Suarez, Js.

*Syllabus*

The plaintiff sought, by way of summary process, immediate possession of
certain residential property that it had acquired and that was occupied
by the named defendant, V. The plaintiff alleged that it did not have a
tenancy agreement with V. Although the state had a temporary morato-
rium on evictions per the governor's executive orders issued in response
to the COVID-19 pandemic, the plaintiff alleged one of the recognized
exceptions created by those orders, namely, that the plaintiff's sole
member, R, had a bona fide intention to use the dwelling unit as his
principal residence. During trial, R testified that the plaintiff purchased
the premises in October, 2020, from S Co., and that he had a bona fide
intention to use the premises as his principal residence. V, however,
indicated that the plaintiff brought this action as a result of a loophole
in a prior summary process action brought by S Co. against V and her
estranged husband, D, and that she did not believe R had a bona fide
intent to occupy the premises as his principal residence. In that prior
summary process action, S Co., alleging that D was delinquent in his
rental payments, commenced its action shortly after V had commenced
a dissolution action against D. As a result, the trial court stayed S Co.'s
action through the pendency of the dissolution action, which was still
pending, and, therefore, temporarily removed S Co.'s right to maintain
the summary process action in the absence of an order from the family
court. S Co. thereafter conveyed the property to the plaintiff. Following
trial on the plaintiff's summary process action, the court issued a memo-
randum of decision, concluding that the plaintiff had not established
that its ownership rights to the premises included the right to maintain
the summary process action. Thereafter, the trial court rendered judg-
ment dismissing the action, from which the plaintiff appealed to this
court. On appeal, the plaintiff claimed, inter alia, that the trial court
erred by dismissing the summary process action on the basis of its
posttrial consideration of extra-record evidence, namely, S Co.'s prior
summary process action. Although S Co.'s action was eventually dis-
missed for dormancy, the trial court observed that S Co. could not as
a matter of law have conveyed to the plaintiff the right to maintain a
summary process action against V because, as a result of the stay, it
did not have such a right of its own. *Held* that the trial court abused
its discretion in taking judicial notice of S Co.'s summary process action
without providing the parties an opportunity to address it either at trial
or in a posttrial brief: although notice is not always required when a
court takes judicial notice, parties are entitled to receive notice and
have an opportunity to be heard for matters susceptible of explanation
or contradiction; moreover, the trial court relied on the facts of S Co.'s
summary process action in concluding that the plaintiff did not have
the right to bring the present action but did not give the parties an
opportunity to address whether the stay that was entered in S Co.'s
action prevented the current plaintiff from pursuing its own action
against V; accordingly, the judgment was reversed and a new trial
ordered.

Submitted on briefs September 15, 2021—officially released February 8, 2022

*Procedural History*

Summary process action, brought to the Superior
Court in the judicial district of Fairfield, Housing Ses-
sion at Bridgeport, and tried to the court, *Spader, J.*;
judgment of dismissal, from which the plaintiff
appealed to this court. *Reversed; new trial.*

*Jonathan J. Klein,* for the appellant (plaintiff).

*Marissa Vicario* and *Nilda R. Havrilla,* for the appellee (named defendant).

*Opinion*

SUAREZ, J. The plaintiff, Rogalis, LLC, appeals from the judgment of the trial court dismissing its summary process action against the named defendant, Michelle Lee Vazquez.[1] On appeal, the plaintiff claims that the trial court erred by (1) holding that the plaintiff did not acquire from its predecessor in title, pursuant to a quitclaim deed, the right to evict the defendant, (2) dismissing the summary process action on the ground that the plaintiff's sole member did not have the bona fide intention to use the dwelling as his principal residence, and (3) dismissing the summary process action on the basis of the court's posttrial consideration of extra-record evidence, namely, a prior summary process action brought by the plaintiff's predecessor in title against the defendant and her estranged husband. We conclude that the trial court abused its discretion in taking judicial notice of the prior summary process action without providing the parties an opportunity to address it either at trial or in a posttrial brief.[2] We, therefore, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. By complaint dated October 30, 2020, the plaintiff commenced this summary process action seeking immediate possession of the premises located at 1335 James Farm Road in Stratford (premises). The plaintiff alleged that it had purchased the premises on or about October 7, 2020, and, therefore, had become the landlord of the premises. The plaintiff further alleged that the defendant was in possession of the premises, that the plaintiff and the defendant never had an agreement as to monetary compensation for the premises, and that it was the plaintiff's "bona fide intention to use the dwelling unit as the landlord's principal residence. (No tenancy agreement between the parties.)" On October 19, 2020, prior to the commencement of the summary process action, the plaintiff had served a notice to quit on the defendant demanding that she vacate the premises on or before October 25, 2020.

On November 6, 2020, the self-represented defendant filed an answer, admitting the allegations of the plaintiff's complaint except the allegation that it was the landlord's bona fide intention to use the dwelling as the landlord's principal residence. As to this allegation, the defendant responded that she did not know.[3] A trial took place before the court on January 13, 2021. Following trial, the court issued a memorandum of decision in which it concluded that the plaintiff had not established that its ownership rights to the premises included the right to maintain this action. The court thereafter rendered judgment dismissing the summary process action. The plaintiff then filed the present appeal.

On appeal, the plaintiff claims, inter alia, that the trial

court erred by dismissing this action on the basis of its posttrial consideration of extra-record evidence, namely, a prior summary process action brought by the former owner of the premises, Success, Inc., against the defendant and her estranged husband, Dahill Donofrio. This extra-record evidence reflected that Success, Inc., had commenced the prior action shortly after the defendant had commenced a dissolution action against Donofrio. The trial court had stayed the prior action through the pendency of the defendant's dissolution action, which was still pending. Thereafter, Success, Inc., conveyed its rights in the premises to the plaintiff. Although the court noted that the prior action was eventually dismissed for dormancy, it observed that Success, Inc., could not as a matter of law have conveyed to the plaintiff the right to maintain a summary process action against the defendant because, as a result of the stay, it did not have such a right of its own.

As we explain in more detail later in this opinion, the court expressly relied on the prior summary process action in determining that the plaintiff did not have the right to maintain the present summary process action against the defendant. The defendant contends that the trial court properly took judicial notice of the prior summary process action. We conclude that the trial court abused its discretion in taking judicial notice of the prior summary process action without providing the parties an opportunity to address it either at trial or in a posttrial brief.

Before addressing the merits of the plaintiff's claim, we briefly set forth the legal basis pursuant to which the plaintiff brought this summary process action. On April 10, 2020, Governor Ned Lamont issued Executive Order No. 7X, which modified General Statutes § 47a-23 by placing a moratorium on the issuance of notices to quit and the commencement of summary process actions through June 30, 2020. This executive order provided, in part, that "minimizing evictions during this public health period is critical to controlling and reducing the spread of COVID-19 by allowing all residents to stay home or at their place of residence . . . ." Executive Order No. 7X (April 10, 2020). An exception to the moratorium was for notices to quit and summary process actions brought on the basis of serious nuisance as defined in General Statutes § 47a-15. Executive Order No. 7DDD, issued on June 29, 2020, created another exception to the moratorium "for nonpayment of rent due on or prior to February 29, 2020 . . . ." Executive Order No. 7OOO, issued on August 21, 2020, created an exception to the moratorium "for a bona fide intention by the landlord to use such dwelling unit as [the] landlord's principal residence" provided that the notice to quit is not delivered during the term of any existing rental agreement. The present action was brought pursuant to Executive Order No. 7OOO.

We now set forth the following additional facts that are necessary for the resolution of the plaintiff's claim. Prior to trial, the plaintiff filed the affidavit of Joseph Rogalis, the sole member of the plaintiff. In the affidavit, Rogalis averred, inter alia, that the plaintiff purchased the subject premises on October 7, 2020, and that he had a bona fide intent to use the premises as his principal residence. Rogalis further averred that his mother lived in Oxford and his father lived in Prospect and it was his intention to relocate to Stratford so that he could live in close proximity to his parents and care for them. The plaintiff also filed a certified copy of a quitclaim deed recorded on October 7, 2020, pursuant to which the plaintiff acquired the premises from Success, Inc. "for One Dollar ($1.00) and other valuable consideration . . . ." This deed was signed by Gus Curcio, Sr., the president of Success, Inc.

At trial, Rogalis testified, consistent with his affidavit, that the plaintiff purchased the premises on or about October 7, 2020, with a bona fide intent that he would use the premises as his principal residence. Rogalis testified that he was a resident of Tavares, Florida and was relocating in order to assist in the health care of his mother, who lived in Oxford. In response, the defendant indicated that the plaintiff brought this action as a result of a "loophole" in a prior judgment, and that she did not believe that Rogalis had a bona fide intent to occupy the premises as his principal residence.[4]

In its memorandum of decision, the court stated that, "[f]ollowing the conclusion of the trial, the court pieced together what the defendant was referring to as a 'loophole.' While the court did not recognize it until considering the case afterwards, the defendant had been a participant in previous matters before it. Specifically, in the matter of *Success, Inc.* v. *Donofrio*, Superior Court, judicial district of Fairfield, Housing Session at Bridgeport, Docket No. CV-19-6008242-S, the court had conducted a trial and, on January 10, 2020, entered a stay of proceedings through the pendency of the defendant's divorce matter . . . . In the *Donofrio* case, the previous landlord testified that the defendant's ex-husband was delinquent in his rental payments on this very [premises]." The court further noted that the previous case had been dismissed for dormancy, but the divorce was still pending and was scheduled for trial in the coming months.

In its decision, the court stated that "[c]ertainly, the court, when entering that stay, could not have anticipated that the divorce matter would still be pending a year later. The pandemic's impact on court dockets has created many challenges. This court certainly believes that there does come a time when possession must be returned to the property owner absent rental or use and occupancy payments by the defendant. That time probably has come and would have been considered

by this court in an honest application before it to terminate the stay. Instead, the plaintiff has come before this court (with the same attorney who handled the prior matter) without disclosing this prior case or the court's ruling in it at trial."

The court further stated that "[the plaintiff] could only obtain through a quitclaim deed from Success, Inc., rights that were still in Success, Inc.'s 'bundle of rights' at the time of conveyance. The court, in *Success, Inc.* v. *Donofrio*, supra, Superior Court, Docket No. CV-19-6008242-S, temporarily removed the right to maintain a summary process action absent order from the Bridgeport family court from Success, Inc.'s 'bundle of rights' it was able to convey. A conveyance of the property to another owner does not create additional rights that did not exist before the conveyance. Success, Inc., had no ability, absent an additional court order, to maintain a summary process action against this defendant. That right does not magically rematerialize if an action is brought by a new plaintiff."

According to the plaintiff, the court's dismissal of this action was predicated on its belief that the quitclaim deed from Success, Inc., to the plaintiff did not confer on the plaintiff the right to evict the defendant. The plaintiff contends that the court's conclusion was "solely the product of the trial court having considered extra-record evidence, which it sought out after the close of the evidence, namely, that a previous summary process action brought by the plaintiff's grantor, in which the defendant and her estranged husband were both defendants, [had] been interlocutorily stayed at one point before it was dismissed for dormancy." According to the plaintiff, the trial court should not have considered that extra-record evidence without affording the plaintiff an opportunity to address it at trial or in a posttrial brief. The defendant contends, in response, that the trial court properly took judicial notice of the prior summary process action. We conclude that the court abused its discretion in taking judicial notice of the prior summary process action without providing the parties the opportunity to address it either at trial or in a supplemental brief.

In considering this claim, we note that the trial court did not expressly characterize its reliance on the facts concerning the prior summary process action as it having taken "judicial notice" of those facts. In its decision, however, the court discussed the prior summary process action and attached a copy of the order staying that action pending the defendant's divorce matter. As " '[t]here is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties' "; *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995); it appears that the court took judicial notice of the prior summary process action. See *Ferraro* v. *Ferraro*, 168

Conn. App. 723, 731–33, 147 A.3d 188 (2016) (court did not indicate, in its memorandum of decision or articulation, that it had taken judicial notice of supplemental information in calculating defendant's net income, but if it did take judicial notice of certain facts, it should have provided parties with opportunity to be heard).

"A trial court's determination as to whether to take judicial notice is essentially an evidentiary ruling, subject to an abuse of discretion standard of review. . . . In order to establish reversible error, the [plaintiff] must prove both an abuse of discretion and a harm that resulted from such abuse. . . . In reviewing a trial court's evidentiary ruling, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently . . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." (Internal quotation marks omitted.) *Scalora* v. *Scalora*, 189 Conn. App. 703, 713, 209 A.3d 1 (2019).

"Notice to the parties is not always required when a court takes judicial notice." *Moore* v. *Moore*, 173 Conn. 120, 121, 376 A.2d 1085 (1977). "The court may take judicial notice without a request of a party to do so. Parties are entitled to receive notice and have an opportunity to be heard for matters susceptible of explanation or contradiction, but not for matters of established fact, the accuracy of which cannot be questioned." Conn. Code Evid. § 2-2 (b). "Even when a fact . . . is not open to argument, it may be the better practice to give the parties an opportunity to be heard." *Moore* v. *Moore*, supra, 122; see also E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 2.6.3, p. 112 ("'[b]etter practice,' if not principles of due process, clearly favors an opportunity to be heard on any matter to be noticed, including such issues as the 'noticeability' of the matter, its 'susceptibility' to explanation or contradiction, the 'authoritativeness' of the sources advanced in support of the proposition, and the proper use of the matter in the case at hand").

In concluding that the plaintiff did not have the right to bring the present summary process action, the court relied on the facts of the prior summary process action. The court, however, did not give the parties an opportunity to address whether the stay that was entered in the prior summary process action prevented the current plaintiff from pursuing its own action against the defendant. Even assuming that the stay entered in the prior action was binding on the plaintiff, the court did not give the parties the opportunity to address whether the stay was still in effect in light of the fact that the prior action had been dismissed for dormancy. Under these circumstances, we conclude that the court abused its discretion in taking judicial notice of the prior summary process action without affording the parties the oppor-

tunity at trial or in a posttrial brief to address its impact. We likewise conclude that the proper remedy is to reverse the judgment and remand the case for a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] The plaintiff also named John Doe I, John Doe II, John Doe III, Jane Doe I, Jane Doe II, and Jane Doe III as defendants in this action. The plaintiff later withdrew the action as to these defendants. We refer to Vazquez as the defendant in this opinion.

[2] Because our resolution of this claim is dispositive of the appeal, it is unnecessary for us to consider the plaintiff's remaining claims.

[3] The defendant also disagreed with the allegation that the plaintiff did not know the identity of John Doe I, John Doe II, John Doe III, Jane Doe I, Jane Doe II, and Jane Doe III. As stated in footnote 1 of this opinion, however, this action was withdrawn as to these defendants.

[4] The following colloquy between the court, the plaintiff's counsel, and the defendant occurred at trial:

"The Court: Ms. Vazquez, what do you want the court to know about this action?

"The Defendant: Well, on October 7th, there was actually a deposition on Gus Curcio in which that's when I found out–

"[The Plaintiff's Counsel]: Objection, Your Honor. Relevance.

"The Court: Well, he's the grantor on the deed that you presented to the court. So, I'll hear this.

"[The Plaintiff's Counsel]: Thank you, Your Honor.

"The Defendant: Thank you. So, on October 7th, it was a deposition for Gus Curcio in which that's when he informed my lawyer and myself that he sold the property that day. I just find that funny. He's upset with the deposition and the fact that you allowed me to stay there until the divorce is final. So, my thing is they didn't like the ruling, so they had to find a loophole–

"[The Plaintiff's Counsel]: I'm going to object again, Your Honor. Who's they? I don't know who she's referring to as they.

"The Defendant: Gus Curcio, Success, Inc., and Dahill Donofrio.

"[The Plaintiff's Counsel]: I'm going to object again because of relevance, Your Honor.

"The Court: It's relevant because again they're the grantors of this property to the . . . plaintiff.

"The Defendant: Thank you. So, what happens is that I believe–what happened is they didn't like the judgment, so they found a loophole to sell the property to a friend. The property was never listed. He lives in Florida.

"[The Plaintiff's Counsel]: Objection, Your Honor. This is all out of scope of her pleadings.

"The Court: But it's not out of the scope of what case you're trying to put forward, counsel, which is a bona fide intent of this individual to occupy this premises as his primary residence. So, it's a defense to the cause of action."

The defendant later testified that "the only thing that makes sense is they sell the house to a friend so that they can put a new eviction in to get me out sooner because now it's a totally different person instead of Gus Curcio, Success, Inc., and Dahill Donofrio."